UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESIGN BASICS, LLC,

    Plaintiff,

v.

ROERSMA & WURN BUILDERS, INC.,
WILLIAM ROERSMA, MARK R. WURN,
CHOICE REALTY OF MI, LLC and
BUILDERS MANAGEMENT GROUP, L.L.C.,

    Defendants.

Case No. 1:10-cv-696

Hon. Robert J. Jonker

| | |
|---|---|
| Thomas V. Hubbard (P60575)<br>Theodore J. Westbrook (P70834)<br>J. Joseph Rossi (P53941)<br>Drew, Cooper & Anding, P.C.<br>Attorneys for Plaintiff<br>Aldrich Place, Suite 200<br>80 Ottawa Avenue, N.W.<br>Grand Rapids, MI 49503<br>Ph:    (616) 454-8300<br>thubbard@dca-lawyers.com<br>twestbrook@dca-lawyers.com<br>jrossi@dca-lawyers.com<br><br>Dana A. LeJune<br>Texas Bar No. 12188250<br>LeJune Law Firm<br>Attorney for Plaintiff<br>6525 Washington Ave., Suite 300<br>Houston, TX 77007<br>Ph:    (713) 942-9898<br>dlejune@triallawyers.net | Christopher S. Berry (P68580)<br>Berry & Berry PLC<br>Attorneys for Defendants<br>170 College, Suite 320<br>Holland, MI 49423<br>Ph:    (616) 796-9600<br>cberry@berryplc.com<br><br>Joseph P. VanderVeen (P55970)<br>Strain, Murphy & Vander Wal, P.C.<br>Attorney for Defendant Builders Management Group, L.L.C.<br>2900 East Beltline Avenue, N.E.<br>Grand Rapids, MI 49525<br>Ph:    (616) 364-2900<br>jvanderveen@smvpc.com |

**RESPONSE IN OPPOSITION TO DEFENDANTS WILLIAM ROERSMA, MARK
WURN AND BUILDERS MANAGEMENT GROUP'S MOTION IN LIMINE**

**I.      INTRODUCTION**

Despite Defendants apparent belief, Design Basics, LLC ("DB") does ***not*** intend to argue that Defendants William Roersma, Mark Wurn, and/or Builders Management Group ("BMG") are "jointly" liable for any profits made attributable to the copyright infringement at issue in this case by Defendant Roersma & Wurn Builders, Inc. ("RWB"). Instead, DB will show that these Defendants are ***each*** separately liable for vicarious or contributory infringement, and thus must disgorge profits ***each*** pocketed from the sale of the infringing houses. Contrary to Defendants contention otherwise, this disgorgement includes any profits generated by Defendant BMG's sale to Defendant RWB of the lots on which the infringing houses were built.

**II.     RELEVANT FACTS**

DB sells licenses to its copyrighted architectural house plans to builders throughout the United States. The proofs at trial will show that Defendants copied eight (8) of DB copyrighted plans, then built and sold infringing three-dimensional copies (i.e., houses) of those pilfered DB plans. Pursuant to its rights under the Federal Copyright Act, DB has sued in this action for Defendants' disgorgement of profits attributable to approximately (70) infringing houses which were constructed and sold by Defendants.

**III.    LAW AND ARGUMENT**

    **A.    DB IS *ONLY* REQUIRED TO PROVE DEFENDANTS' GROSS REVENUES; DEFENDANTS MUST PROVE DEDUCTIBLE EXPENSES OR THAT PORTIONS OF PROFIT ARE NOT ATTRIBUTABLE TO THE INFRINGEMENT.**

The Copyright Act provides, as a remedy for infringement, either: (1) the "copyright owner's actual damages and any additional profits of the infringer," or (2) statutory damages. 17 U.S.C. § 504. As damages in the instant case, DB requests disgorgement of all of the infringers' profits from the sale of infringing houses built by Defendants, including the net profit from lot

1

sales, consulting fees, real estate commissions, rebates paid by suppliers, and attributable profits of the principals of Defendants RWB and BMG.

When architectural works are infringed through reproduction or distribution of plans, or through the construction and sale of infringing structures (three dimensional embodiments of the work), the profits attributable to the sale of copies of the works are recoverable under § 504(b) of the Copyright Act.  Liability for copyright infringement of architectural works is not limited to individuals who copy protected blue prints or floor plans.  Direct liability for copyright infringement of house plans also extends to builders and all others who contribute to, help consummate, or profit from the infringements: "[t]he most egregious examples of structural infringement will not involve an infringing architect; they will involve an infringing builder who simply steals an architect's design." *Axelrod & Cherveny, Architects, P.C. v. T. & S. Builders Inc.*, 2008 U.S. Dist. LEXIS 60212, *17 (E.D.N.Y. Aug. 6, 2008) (citations omitted).  In such as case, the *entire house* constructed from infringing plans should be considered an infringement of the architect's copyright.  *Christopher Phelps & Associates v. Galloway*, 492 F.3d 532, 539 (4th Cir. 2007).

Courts in the Sixth Circuit recognize that both the copied plan *and* the house constructed with that plan constitute infringement:

> [T]he copyright holder has the exclusive right to reproduce or prepare derivative works based upon the copyrighted work. 17 U.S.C. § 106. As a result, it is generally accepted that if a person copies architectural drawings copyrighted under the AWCPA *and then builds a house based on the infringing copy, he has infringed the copyright in the original plans both by copying the drawing and by building the house.*

*Frank Betz Assocs. v. J.O. Clark Constr., L.L.C.*, 2010 U.S. Dist. LEXIS 53437, *29-30 (M.D. Tenn. May 30, 2010) (emphasis added); *VanBrouck and Associates, Inc., v. Darmik*, 329 F. Supp. 2d 924, 936-937 (E.D. Mich. 2004) (finding an award of infringer's profits derived from

the value of the constructed house necessary to prevent the infringer from benefitting from the wrongful act of infringement) (quoting *Hammil Am., Inc., v. GFI Inc.*, 193 F.3d 92, 103 (2nd Cir. 1999); *Johnson v. Jones*, 921 F. Supp 1573, 1586 (E.D. Mich. 1996) (finding infringer's profits from the sale of a house directly attributable to the architect's copyrighted house plans). These cases are in accord with cases from other Circuits. *See, e.g.*, *Thomas M. Gilbert Architects v. Accent Builders*, 377 Fed. Appx. 303, 310 (4th Cir. 2010) (finding that once the architect copyright holder established the amount of gross revenues from construction of an infringing home, it was the defendants' burden to prove any deductible expenses); *Gardner Architects, Inc. v. Cambridge Builders,* 803 F. Supp. 2d 373 (E.D. N.C. 2011) (explaining that the Copyright Act allows for disgorgement of profits earned by a builder who infringed upon the plaintiff architect's copyrighted house plans); *see also* Plaintiff's Pretrial Brief on Recovery of Infringer's Profits Pursuant to 17 U.S.C. § 504(b) (Dkt. No. 176) (citing cases from the Fourth, Sixth, and Ninth Circuits awarding infringer's profits in cases where defendant builders infringed upon copyrighted architectural works).

Recently, in *Balsley v. LFP, Inc.*, 2012 U.S. App. LEXIS 17187 (6th Cir. Aug. 16, 2012), the Sixth Circuit explained a copyright owner's required showing with regard to profits as follows: "Plaintiffs have only one requirement: to prove Defendant's gross revenue. We agree with our sister Circuits in holding that this gross revenue number must have a reasonable relationship—relevance, in other words—to the infringing activity." *Id.*, at *46. The Sixth Circuit further explained that the burden of proving any deductible expenses or apportionment is on the infringers:

> ***The only statutory requirement on a copyright owner is proving gross revenue, which is presumed to be the infringer's profits until the infringer proves otherwise*** . . . [T]he burden of proving which portions of that gross revenue are 'attributable to' or not attributable to the infringement is on the infringer—not the

3

> copyright owner. *'Where there is a commingling of gains, [the defendant] must abide the consequences, unless he can make a separation of the profits so as to assure to the injured party all that justly belongs to him.' Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390, 406 (1940); see Andreas, 336 F.3d at 796 (holding that "[a]ny doubt as to the computation of costs or profits is to be resolved in favor of the plaintiff.)* If the infringing defendant does not meet its burden of proving costs, the gross figure stands as the defendant's profits.' (citing *Frank Music Corp. v. Metro-Goldwyn Mayer, Inc.* 772 F.2d 505, 514 (9th Cir. 1985)).

*Balsley*, at \*42-43 (emphasis added). As such, it is settled law in the Sixth Circuit that DB must prove only gross revenues from the sale of the infringing houses. It is up to Defendants to prove to the jury that deductible expenses exist or that apportionment applies such that DB should not be awarded the full amount of Defendants' gross revenues attributable to Defendants' copyright infringement.

      **B.**    **AS VICARIOUS INFRINGERS, MARK WURN, WILLIAM ROERSMA, AND BMG MUST DISGORGE PROFITS WHICH ARE ATTRIBUTABLE TO THE CONSTRUCTION OF THE INFRINGING HOUSES.**

According to the United States Supreme Court, "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). *See also Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004) ("Contributory infringement occurs when one, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another. A defendant can be held vicariously liable if he enjoys a direct financial benefit from the infringing activity and has the right and ability to supervise the infringing activity.") (internal quotation marks and citation omitted). There are two elements to a successful claim of vicarious copyright infringement: (1) "the right and ability to supervise the infringing conduct" and (2) "an obvious and direct financial interest in the exploitation of

copyrighted materials." 3-12 Nimmer on Copyright § 12.04[A][2] (quoting *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir.1963)).  A defendant with the ability to supervise the infringing conduct and a direct financial interest can be held liable for vicarious infringement even without knowledge of the infringement by the direct infringer: the doctrine of vicarious infringement "allows imposition of liability when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement."  *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 931 (2005). While Defendants are correct that Defendants Mark Wurn, William Roersma, and BMG cannot be held "jointly" liable for another Defendant's infringement, under established concepts of secondary infringement, each of these Defendants must be required to disgorge profits that flowed to each of them from the sale of infringing houses after DB proves that each of these Defendants is a vicarious infringer.

Mark Wurn and William Roersma testified that they drew a salary and also received pay-outs of profits from RWB when profits were realized. They divided these profits 50/50 in accordance with their percentage of ownership.  Further, Mark Wurn, William Roersma and Janet Reinke (RWB's bookkeeper) owned portions (Wurn 44%, Roersma 44%, Reinke 12%) of co-defendant BMG, which served, through its "consulting services," as a conduit for additional profits to be channeled to Mark Wurn and William Roersma from construction of infringing houses. Janet Reinke testified that the consulting services provided were "site selection, construction management, and construction financing," the exact jobs that Mark Wurn and William Roersma performed day-to-day for Defendant RWB (*See* Reinke Dep. Tr., pp. 77:19-80:4, attached as Exhibit 1.) By paying a "double-dip" consulting fee, BMG was channeling

5

additional profits to William Roersma and Mark Wurn as vicarious infringers who stood to gain from the infringement.

In addition, BMG sold lots upon which infringing houses were constructed at a considerable profit. BMG knew *exactly* which house plans were being built on which lots because Mark Wurn and William Roersma, together the managing members of BMG, are also the sole owners of RWB, managed the construction of houses by RWB and thus had the authority to stop any infringing activity by RWB.  BMG's profits (and those later funneled to Mark Wurn and William Roersma by BMG) represent a "commingling of gains" attributable to the construction, advertising and/or sale of infringing houses, and thus must be disgorged as infringer's profits. (*See* Reinke Dep. Tr., pp. 96:24-97:11, attached as Exhibit 1; explaining that Messrs. Roersma and Wurn are the only ones who have the authority to sign off on the sale of property by BMG and stating a belief that BMG never sold "anything to anybody but Roersma & Wurn.")

In sum, DB does not intend to argue that BMG, Mark Wurn, and William Roersma are *jointly and severally* liable for any damages assessed against RWB, as that term is used in the arena of tort liability, but instead that these three Defendants are vicariously liable for direct infringement because each: (1) enjoyed a direct financial benefit from the building of infringing houses and (2) had the authority to limit or stop the infringing activity. DB objects to Defendants' request for the entry of an Order prohibiting Plaintiff from asserting at trial that these three Defendants are "jointly" liable for any profits earned by another Defendant as such an order is unnecessary.

### C. DEFENDANTS' GROSS REVENUES FROM THE SALE OF INFRINGING HOUSES INCLUDES PROFITS FROM LOT SALES.

Once DB shows that BMG, William Roersma, and Mark Wurn are vicarious infringers, these three Defendants must disgorge their gross revenues attributable to the infringement. This includes gross revenue from the sale of the lots (i.e. the land sold with each house). As explained above, it is then up to the Defendants to prove legitimate deductible expenses which should be subtracted from the gross revenue.

Contrary to Defendants' assertion, there are numerous cases which support the disgorgement of any profits made from the sale of land upon which an infringing house was built. For example, in *Van Brouck & Assocs. v. Darmik, Inc.*, 2004 U.S. Dist. LEXIS 15397, *30-31 (E.D. Mich. Aug. 4, 2004), the court first calculated the value of the infringing house, then, as part of its determination of net profits, the court apportioned costs for buying and developing the subdivision so that only a 5.78% portion of land cost was subtracted from the total value of the infringing house. In making this calculation, the court left in the "profit" from the sale of the land—that portion of the total value of the house that was attributable to the value of the lot.

Further, in *Richmond Homes Management, Inc. v. Raintree, Inc.*, 862 F. Supp. 1517 (W.D. Va. 1994), the plaintiff first sued Raintree, Inc., for infringing on one of its copyrighted house designs, but later added defendants Sunset Investments, "a Virginia corporation principally in the business of purchasing lots for resale" and Jared L. Lake, "the sole stockholder in Raintree and Sunset Investments." *Id.*, at 1520. The court found both of the additional defendants liable as contributory infringers because each knew of the infringing activity and the company selling lots "played a significant part in the sale of the infringing homes, and profited

thereby." *Id.*, at 1528. The court then included the lot sale profits in its calculation of gross revenues flowing from the sales of infringing houses.

Similarly, in *Nelson-Salabes, Inc. v. Morningside Development, LLC*, the Fourth Circuit affirmed a finding that the owner of the land, Morningside Holdings, was liable for vicarious infringement of the architects design for an assisted living facility called Satyr Hill:

> In its Opinion, the court found, inter alia, (1) that Morningside Holdings possessed the right and ability to supervise the infringing activity of Morningside Development, and (2) that Morningside Holdings had an obvious and direct financial interest in Morningside Development's infringement of NSI's copyright. Opinion at 27-28. Under the evidence, Morningside Holdings owned Satyr Hill, thereby giving it the right and ability to control construction of the Project by Morningside Development. In that connection, its ownership of Satyr Hill provided Morningside Holdings with an obvious and direct financial interest in the infringing activities of Morningside Development. *Id.* That is, Morningside Holdings enjoyed the benefit of any increase in the Project's value resulting from Morningside Development's infringement of the NSI Drawings. In light of the evidence, we are unable to conclude that these findings are clearly erroneous, and we affirm the court's determination that Morningside Holdings is liable to NSI for the infringement of NSI's copyright.

*Nelson-Salabes, Inc. v. Morningside Development, LLC,* 284 F.3d 505, 513 -514 (4th Cir. 2002). Such a finding of liability would be meaningless without requiring the disgorgement of the infringer's profits. Indeed, the district court had awarded the disgorgement of each of the defendants' profits on the project. *See Id.*, at 517.

Contrary to Defendants' contention, the case of *Lifetime Homes v. Residential Development Corp.*, 510 F. Supp. 794, 808-09 (M.D. Fla. 2007) does ***not*** state that a defendant infringer can never be liable for selling land to an infringer. Rather, the court stated that "the act of buying and selling land to one who infringes another's copyright by constructing homes" was not sufficient, ***without more***, to hold the seller of the land accountable for the infringement. *Lifetime Homes* in no way forecloses DB's right to seek disgorgement of profits from BMG for its role in the sale of infringing houses, particularly where DB is able to prove that BMG was

either a vicarious infringer or contributory infringer. Defendant BMG would not have received revenue for the sale of the land without having first sold the lots to RWB, for the construction of the infringing houses. As such, the sale of the lots by BMG was a material contribution to the sale of the infringing product, and profits from the sales of those lots should be disgorged. In addition, as explained above, BMG's managing members are Messrs. Roersma and Wurn, who had the authority to stop the sale of a lot on which RWB built and infringing house. Without question BMG, through its managing members' actions, stood to gain from sales of the infringing houses. (*See* Diebold Dep. Tr., pp. 120:5-121:24, attached as Exhibit 2; explaining that RWB does not sell the lots separately from the houses, and that Mr. Wurn sets the prices for the sale of the lots.) Thus BMG, like the Morningside Holdings company in *Nelson-Salabes*, must disgorge its profits on the lots sold to RWB for construction of infringing houses.

Plaintiff respectfully requests that this Court deny Defendants' Motion, and allow DB to seek disgorgement of the profits made by BMG from the sale of lots upon which infringing houses were built.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendants William Roersma, Mark Wurn, and BMG's Motion in Limine be denied.

                Respectfully submitted,

Dated: October 9, 2012         /s/ Thomas V. Hubbard
                Thomas V. Hubbard (P60575)
                Theodore J. Westbrook (P70834)
                J. Joseph Rossi (P53941)
                Drew, Cooper & Anding, P.C.
                Attorneys for Plaintiff
                Aldrich Place, Suite 200
                80 Ottawa Avenue, N.W.
                Grand Rapids, MI 49503
                Ph:    (616) 454-8300

        thubbard@dca-lawyers.com
        twestbrook@dca-lawyers.com
        jrossi@dca-lawyers.com


        Dana A. LeJune
        Texas Bar No. 12188250
        LeJune Law Firm
        Attorney for Plaintiff
        6525 Washington Ave., Suite 300
        Houston, TX 77007
        Ph:    (713) 942-9898
        dlejune@triallawyers.net


## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 9, 2012, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.


Dated: October 9, 2012                        /s/ Thomas V. Hubbard
                                                      Thomas V. Hubbard (P60575)
                                                      Theodore J. Westbrook (P70834)
                                                      J. Joseph Rossi (P53941)
                                                      Drew, Cooper & Anding, P.C.
                                                      Attorneys for Plaintiff
                                                      Aldrich Place, Suite 200
                                                      80 Ottawa Avenue, N.W.
                                                      Grand Rapids, MI 49503
                                                      Ph:    (616) 454-8300
                                                      thubbard@dca-lawyers.com
                                                      twestbrook@dca-lawyers.com
                                                      jrossi@dca-lawyers.com

I:\JEATeam\3047-01\PLEADINGS\Resp to MIL re Lot Sales & Joint Liability (120.116)